ELIZABETH IRON WORKS, INC., PLAINTIFF-RESPONDENT, v. KEVON CONSTRUCTION CORP., DEFENDANT-APPELLANT.

Argued November 14, 1977—Decided January 27, 1978.

*Mr. Mark D. Larner* argued the cause for appellant (*Messrs. Budd, Larner, Kent, Gross, Picillo & Rosenbaum,* attorneys; *Mr. Henry A. Larner* on the brief).

*Mr. Ernest Prupis* argued the cause for respondent (*Messrs. Weltchek, Prupis & Ritz,* attorneys).

PER CURIAM. The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division.

CLIFFORD, J., dissenting. The Court holds that a foreign corporation may be subject to the jurisdiction of New Jersey courts where that corporation has no contact whatsoever with this state other than a single contract for the purchase of goods from plaintiff, a New Jersey seller. Jurisdiction based upon such a tenuous connection, with nothing more, strikes me as offensive to "* * * traditional notions of fair play and substantial justice", *International Shoe Co. v. Washington,* 326 *U. S.* 310, 316, 66 *S. Ct.* 154, 158, 90 *L. Ed.* 95, 102 (1945), which are, after all, the ultimate tests of constitutionality. *E. g., Moon Carrier v. Reliance Ins. Co.,* 153 *N. J. Super.* 312, 327 (Law Div. 1977).

The Appellate Division opinion accurately summarizes the undisputed jurisdictional facts. Plaintiff corporation, a supplier of structural steel, has its principal place of business in Union Township, New Jersey. Defendant is a Pennsylvania corporation acting as general contractor on a construction project in Pennsylvania. It owns no property in this state. It has no offices here. It solicits no business in New Jersey. Not one of its officers or stockholders or even employees lives here. No one has entered New Jersey for any business purpose on defendant's behalf. While it was engaged in the Pennsylvania construction project, defendant placed a telephone call to plaintiff with reference to the possible purchase of specially manufactured castellated steel beams. Following this initial telephone communication plaintiff sent an em-

ployee to Pennsylvania to secure defendant's execution of the purchase order. At no time did any person associated with defendant enter New Jersey for any purpose relating to this transaction.

Traditionally, where foreign corporations are not present in this state, our courts have evidenced a willingness to subject them to suit in New Jersey where, due to the corporation's contacts with the state, the interests of New Jersey in providing a forum for the litigation are of such magnitude as to outweigh the burden on the nonresident defendant of coming here to defend. Under such a balancing approach, New Jersey courts have extended jurisdiction in circumstances where, despite the absence of any demonstrable connection of the nonresident defendant with the forum state, policy considerations persuaded the court to strike the balance in favor of providing a forum for the litigation. For instance, where a transaction implicates a regulatory policy of this state, New Jersey may be deemed to have a "special interest" in the transaction justifying the imposition of jurisdiction on a nonresident defendant who had had the slightest contact here. *J. W. Sparks & Co. v. Gallos*, 47 *N. J.* 295, 303 (1966) (purchase and sale of securities);[1] see *McGee v. International Life Ins. Co.*, 355 *U. S.* 220, 223, 78 *S. Ct.* 199, 201, 2 *L. Ed.* 2d 223, 226 (1957) (insurance). Likewise in products liability cases the forum state has a strong protective interest in shielding its residents from the dangers of defective goods and in providing a local forum for injured consumers residing within the forum state who may be without sufficient resources to travel to defendant's place of operation to litigate their claims. *Roche v. Floral Rental Corp.*, 95 *N. J. Super.* 555, 562 (App. Div. 1967), aff'd o. b., 51 *N. J.* 26 (1968).

---

[1]Although transactions in securities are broadly regulated by various Federal enactments, *e. g.*, 15 *U. S. C.* § 77a *et seq.;* 15 *U. S. C.* § 78a *et seq.*, there remains a residue of state regulation as found in the Uniform Securities Law. *N. J. S. A.* 49:3–47 *et seq.; cf.* 15 *U. S. C.* § 78bb(a).

In the present case, however, none of the foregoing policy considerations obtains. Although New Jersey has some interest in contracts which have a significant economic impact within this state, *Avdel Corp. v. Mecure*, 58 *N. J.* 264, 273 (1971), that interest does not rise to the level of a "special interest" so as to justify the imposition of jurisdiction over a defendant whose sole connection with New Jersey is a single transaction for the purchase of goods. New Jersey has no special regulatory interest in the manufacture or distribution of the castellated steel beams in this case. Additionally, resolution of the substantive contractual issue in the instant case, which for the most part turns on the validity of a price modification,[2] will not affect New Jersey's interest in protecting its citizens from unsafe products. Finally, unlike the typical consumer, this corporate plaintiff does not appear to be without the financial resources to travel to a neighboring state to vindicate its claims. See *J. I. Kislak, Inc. v. Trumbull Shopping Park, Inc.*, 150 *N. J. Super.* 96, 105 (App. Div. 1977) ; *cf. Shaffer v. Heitner*, 433 *U. S.* 186 n.19, 97 *S. Ct.* 2569, 2580, 53 *L. Ed.* 2d 683, 698 (1977). The typical insurance company or even, in these litigious times, manufacturer of consumer goods may view the costs of litigation as an almost inevitable expense of doing business in or having contacts with other states. Not so a nonresident construction company which purchases goods from a corporate plaintiff in a single transaction; it should not have to anticipate that it will be subject to the added litigation expenses of defending in a foreign state which it has not entered and with which it has no other connection.

---

[2]To the extent that the underlying dispute involves a price modification, implicating factual issues that may be resolved only on the basis of testimony of witnesses located in both New Jersey and Pennsylvania, New Jersey cannot be said to be the more convenient forum for the litigation. See *McGee v. International Life Ins. Co.*, 355 *U. S.* 220, 223, 78 *S. Ct.* 199, 201, 2 *L. Ed.* 2d 223, 226 (1957).

Despite the recent willingness of courts to extend jurisdiction over nonresident defendants in a variety of circumstances, this trend should not signal a wholesale abandonment of minimum connections by the nonresident defendant to the forum state as a prerequisite to jurisdiction. As Chief Justice Warren aptly noted:

[I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U. S. 416, 418, 77 S. Ct. 1360, 1 L. Ed. 2d 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.

[*Hanson v. Deckla*, 357 *U. S.* 235, 251, 78 *S. Ct.* 1228, 1238, 2 *L. Ed.* 2d 1283, 1296 (1958).]

An issue which may be resolved only by resort to principles of "fair play and substantial justice" inherently calls for a highly subjective exercise. If this defendant, through its representatives, had entered New Jersey or if it had any additional contacts other than this single "economic" one,[3] the imposition of jurisdiction might very well be deemed to meet due process requirements. See *Avdel Corp. v. Mecure, supra,* 58 *N. J.* at 272–73 (economic contacts *plus* entrance by defendant's representatives justified imposing jurisdiction). But I do not believe that New Jersey maintains any

---

[3]Since the issue was never raised by the parties and is therefore not properly before the Court, see *Dresner v. Carrara*, 69 *N. J.* 237, 243 (1976), I express no opinion regarding the burdens and impediments on interstate commerce which might result from the imposition of jurisdiction on a corporation whose sole contacts with a forum state are "economic" in nature. See *Erlanger Mills v. Cohoes Fibre Mills*, 239 *F.* 2d 502, 507 (4th Cir. 1956) ; *Developments in the Law, State Court Jurisdiction*, 73 *Harv. L. Rev.* 909, 983–87 (1960).

"special interest" in the economics of the transaction before us which renders it fair and reasonable to exercise jurisdiction over defendant.

Finally, inasmuch as I find it indistinguishable from this case, I would overrule *Resin Research Lab., Inc. v. Gemini Roller Corp.*, 105 *N. J. Super.* 401 (App. Div. 1969).

I vote to reverse and reinstate the trial court's judgment in favor of defendant.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, SCHREIBER and HANDLER—6.

*For reversal*—Justice CLIFFORD—1.