221 N.J. Super. 647 (1987)
535 A.2d 563
FAIRFIELD LEASE CORPORATION, PLAINTIFF,
v.
LIBERTY TEMPLE UNIVERSAL CHURCH OF CHRIST, INC. AND ALLEYNE JIGGETTS, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided September 15, 1987.
*648 Philip I. Levitan, Esq., Attorney for Plaintiff.
Barbara Ann Daniels, Esq., Attorney for Defendants.
YANOFF, J.S.C. (retired and temporarily assigned on recall).
This motion for summary judgment upon a New York judgment tests whether it is entitled to full faith and credit. Following are the facts revealed by affidavits. In March 1986 Ribert C. Jiggets, Jr. as President of defendant, Liberty Temple Universal Church of Christ, Inc. ("church") agreed to purchase a candy machine and soda machine on behalf of church. At that time he signed two proposals on forms supplied by plaintiff for a factory rebuilt candy machine, at a rental of $79.50 a month, for 39 months, or a total of $3,100.50, and a rebuilt factory cold drink can machine at a rental of $149.50 a month *649 for 39 months, or a total of $5,830.50. The proposal form shows that plaintiff has a New Jersey branch at Hackensack, New Jersey. The proposals contain a three-day cancellation option.
The two items were delivered to the church when Robert C. Jiggetts, Jr. was absent but his mother, Alleyne, was present. In her affidavit she states that she works at the church as a secretary, and signed the lease agreement
... because there was no one else available to sign it. I thought that all that I was doing was accepting delivery of the machine. Neither the delivery person or anyone else explained to me that I was signing a contract for which I would become liable.
The lease agreement is in small type and contains a variety of provisions onerous to the lessee. Typed at the bottom of the first page is a provision that the lease may be cancelled only by registered mail "postmarked within strictly no later than three weekdays." The word "three" has been stricken and "fourth" substituted and initialed "A.J." At the bottom of the second page is a lengthy guaranty, also in small type, signed by Alleyne Jiggetts.
Both the lease and the guaranty provide:
21. This agreement shall be deemed to have been made in the State of New York, regardless of the order in which the signatures of the parties shall be affixed hereto, and shall be interpreted, and the rights and liabilities of the parties here determined, in accordance with the laws of the State of New York, and as part of the consideration for the Lessor's executing this lease, Lessee hereby agrees that all actions or proceedings arising directly or indirectly from this lease shall be litigated only in Courts having situs within the State of New York and Lessee hereby consents to the jurisdiction of any local, State or Federal court located within the State of New York and waives the personal service of any and all process upon Lessee herein, and consents that all such service of process may be made by certified or registered mail, return receipt requested, directed to the Lessee at the address hereinabove stated; and service so made shall be complete two (2) days after the same shall have been posted as aforesaid.
Alleyne Jiggetts's affidavit states also:
7. After the machines were at the church three or four days, at the instruction of my son, I typed a letter to U-Vend advising them that we could not use the machines because the church was too small and we did not have enough patronage. We don't have a copier and sometimes I forget to make a carbon *650 copy of every letter I type. The letter I typed requested that the machines be picked up. The machines are still just sitting at the church and no one has come to take them back.
Suit was instituted in New York against the church on the lease and Alleyne Jiggetts as guarantor.
The affidavit of the lawyer who handled the case in New York states that defendants were served by certified mail, return receipt requested, in accordance with New York practice. Thereafter, the attorney for defendants communicated with her and, according to the New York attorney, without request on her part, was offered an extension of time to answer. The correspondence attached to the New York attorney's affidavit indicates that he requested defendants to settle, and on his own initiative, under date of October 8, 1986, gave defendants' attorney a further extension "until October 22 to obtain a New York counsel or judgment will be entered." Thereafter, judgment was entered in New York in the sum of $9,219.50. No appearance was, in fact, entered in New York.
This motion, of course, must be decided in accordance with the rules applicable to summary judgment. R. 4:46; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954), mod. and rem. on other grounds 25 N.J. 17 (1957).
Absent the consent contained in the lease and guaranty, New York would have no jurisdiction. There are, here, no minimum contacts in the forum state, such as those in International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), and Avdel Corp. v. Mecure, 58 N.J. 264 (1971). All significant events, document signature and delivery of goods occurred in New Jersey. Lessor has places of business both in New York and New Jersey, as shown by the proposal for renting vending equipment.
Plaintiff argues that New York had jurisdiction on the "stream of commerce" theory, stating that "the doing of business with New Jersey residents, the place of performance of the contract, and the convenience of the forum, all were utilized *651 to place jurisdiction in New York in the within matter." But here no act at all took place in New York.
The cases upon which plaintiff relies, for the proposition that New York had long-arm jurisdiction, are not appropriate. This is not a case such as Certisimo v. Heidelberg Co., 122 N.J. Super. 1 (Law Div. 1972), aff'd sub nom. Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J. Super. 251 (App.Div. 1973), where dangerous goods were imported into this State, with injury in this State. Nor is this like City of Philadelphia v. Stadler, 164 N.J. Super. 281 (Cty.D.Ct. 1978), aff'd per curiam 173 N.J. Super. 235, certif. den. 85 N.J. 465 cert. den. 450 U.S. 997, 101 S.Ct. 1702, 68 L.Ed.2d 198 (1981), in which Pennsylvania entered a tax judgment against New Jersey residents long employed in Pennsylvania.
Avdel Corp. v. Mecure, supra, upon which plaintiff relies, affords it no assistance. There, rivets were manufactured in New Jersey to defendant's order and defendant came to New Jersey to return some of them. Justice Proctor, for the Court in that case, notes:
Courts of other states, where their long-arm statutes so permit, have generally sustained the exercise of personal jurisdiction over a defendant who, as a party to a contract, has had some connection with the forum state or who should have anticipated that his conduct would have significant effects in that state. [58 N.J. at 271]
Defendant's actions in New Jersey gave New Jersey jurisdiction under the rule enunciated. In the case at bar, the seller did in New Jersey what in Avdel was sufficient to create jurisdiction in New Jersey. Avdel supports jurisdiction of the basic cause of action in New Jersey, but not in New York.
Choice of law provisions can confer jurisdiction without violation of constitutional rights. See Overmyer Co. Inc. of Ohio v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), reh'g den. 405 U.S. 1049, 92 S.Ct. 1303, 31 L.Ed.2d 592 (1972). This, however, does not exempt them from scrutiny as to meaning, effect, and the circumstances under which they *652 were obtained. If the choice of law agreement is tainted, there is no basis for invocation of the Full Faith and Credit Clause.
Forum selection provisions have long been enforced in New Jersey. Mayer v. Roche, 77 N.J.L. 681 (E. & A. 1909); Ball & Hill v. Consolidated Franklinite Co., 32 N.J.L. 102 (Sup.Ct. 1866). In Air Economy Corp. v. Aero-Flow Dynamics, 122 N.J. Super. 456 (App.Div. 1973), the court adopted the rule formulated in Restatement, Conflict of Laws, § 80 at 244 (1971): "While an agreement to be bound by the laws of a designated state cannot oust a state of judicial jurisdiction, it will be enforced unless it is unfair, unreasonable or against the public policy of the forum state." Id. at 457.
Other jurisdictions have viewed such clauses unenforceable as against public policy, but in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Court ruled that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be `unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913, 32 L.Ed.2d at 520. In In Re Diaz Contracting, Inc., 817 F.2d 1047 (3rd Cir.1987), this view was reiterated and stated to be in accord with New Jersey law.
It is significant that the contract here involved comes within the rubric of "fine print provisions." According to 1 Corbin, Contracts (1963 ed.), § 33:
Such provisions as these are effective to attain their purpose only in case they are actually called to the attention of the other party to the negotiation or are so laid before him that he may be reasonably, and is in fact, believed to have been made aware of them. [Id. at 129]
Even though one who signs a contract is normally held to its provisions (Moreira Constr. Co. Inc. v. Moretrench Corp., 97 N.J. Super. 391 (App.Div. 1967)), aff'd 51 N.J. 405 (1968), the onerous nature of a provision such as this renders it suspect and possibly unenforceable. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 386 (1960); Unico v. Owen, 50 N.J. 101, 123 (1967). It may well be that it should have been called to the attention of the buyer as required in Grossman Furniture *653 Co. v. Pierre, 119 N.J. Super. 411 (Cty.D.Ct. 1972) and cases cited therein. Here, Alleyne Jiggetts, who signed the instruments, asserts that she did so under the impression that she was signing a receipt. As to this, there may be credibility issues, but on a summary judgment motion the statement must be accepted as true. This gives rise to a claim of fraud, a viable defense. See Smith v. Swart, 103 N.J.L. 150 (E. & A. 1926); Lea v. Lea, 32 N.J. Super. 333, 338 (App.Div. 1954), aff'd 18 N.J. 1 (1955). Finally, the provision must be examined for its reasonableness under the circumstances. Cases holding similar provisions unreasonable are abstracted in "Jurisdiction-Contractual Limitations," 31 A.L.R. 4th 404, at 433 et seq. Provisions requiring litigation in a foreign country or another state, especially where plaintiff would be disadvantaged by the law of the foreign forum, have been held unenforceable. Considerations such as control in forum non-conveniens cases are significant. Pertinent are such things as availability and convenience of witnesses. As to this, testimony should be taken, although it seems fairly clear that the provision is much more onerous upon defendant than plaintiff. The fact that plaintiff has a place of business in New Jersey lends credence to the thought that the clause was inserted precisely for the purpose of disadvantaging a buyer.
William Sternberg & Associates, Inc. v. Litho Supply, Inc., 219 N.J. Super. 201 (Law Div. 1987) is pertinent to the problems in this case. The contract there provided that it was to be governed by the "Uniform Commercial Code in effect in the State of New Jersey." It did not contain a choice of forum and submission to jurisdiction provision, such as we have here. The court, after finding that there were not sufficient minimum contacts to establish New Jersey jurisdiction, held that the "choice of law clause" alone would [not] be determinative on the issue of in personam jurisdiction, just as I hold here despite invocation of the Full Faith and Credit Clause that the more comprehensive language discussed above is not conclusive on that issue. Sternberg, thus, is consistent with this ruling.
*654 For the foregoing consideration, plaintiff's summary judgment motion is denied.
Defendants' attorney is requested to submit an appropriate order in accordance with the rules.